UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

-------------------------------------------------------------

JOSHUA WIDRICK,

               Plaintiff,

         v.

MONTAGE RESOURCES CORPORATION,
RANDALL M. ALBERT, MARK E.
BURROUGHS, JR., DON DIMITRIEVICH,
RICHARD D. PATERSON, D. MARTIN
PHILLIPS, JOHN K. REINHART, and
DOUGLAS E. SWANSON, JR.,

               Defendants.

-------------------------------------------------------------

Case No._____

**COMPLAINT FOR VIOLATIONS OF
THE FEDERAL SECURITIES LAWS**

JURY TRIAL DEMANDED

Plaintiff Joshua Widrick ("Plaintiff"), by and through his undersigned counsel, for his complaint against defendants, alleges upon personal knowledge with respect to himself, and upon information and belief based upon, *inter alia*, the investigation of counsel as to all other allegations herein, as follows:

**NATURE AND SUMMARY OF THE ACTION**

1.      This is an action brought by Plaintiff against Montage Resources Corporation ("Montage" or the "Company") and the members of its Board of Directors (the "Board" or the "Individual Defendants") for their violations of Sections 14(a) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. §§ 78n(a), 78t(a), and U.S. Securities and Exchange Commission ("SEC") Rule 14a-9, 17 C.F.R. § 240.14a-9, and to enjoin the vote on a proposed transaction, pursuant to which Montage will be acquired by Southwestern Energy Company ("Southwestern") (the "Proposed Transaction").

2.      On August 12, 2020, Montage and Southwestern issued a joint press release announcing that they had entered into an Agreement and Plan of Merger dated August 12, 2020

(the "Merger Agreement") to sell Montage to Southwestern.  Under the terms of the Merger Agreement, each Montage stockholder will receive 1.8656 shares of Southwestern common stock for each share of Montage common stock they own (the "Merger Consideration").  Upon completion of the Proposed Transaction, Southwestern stockholders will own approximately 90% and Montage stockholders will own approximately 10% of the combined company.

3.      On October 6, 2020, Montage filed a Schedule 14A Definitive Proxy Statement (the "Proxy Statement") with the SEC.  The Proxy Statement, which recommends that Montage stockholders vote in favor of the Proposed Transaction, omits or misrepresents material information concerning, among other things: (i) the Company's and Southwestern's financial projections and the data and inputs underlying the financial valuation analyses that support the fairness opinion provided by the Company's financial advisor, Barclays Capital Inc. ("Barclays"); (ii) Barclays' potential conflicts of interest; and the background of the Proposed Transaction. Defendants authorized the issuance of the false and misleading Proxy Statement in violation of Sections 14(a) and 20(a) of the Exchange Act.

4.      In short, unless remedied, Montage's public stockholders will be irreparably harmed because the Proxy Statement's material misrepresentations and omissions prevent them from making a sufficiently informed voting decision on the Proposed Transaction.  Plaintiff seeks to enjoin the stockholder vote on the Proposed Transaction unless and until such Exchange Act violations are cured.

## JURISDICTION AND VENUE

5.      This Court has jurisdiction over the claims asserted herein for violations of Sections 14(a) and 20(a) of the Exchange Act and SEC Rule 14a-9 promulgated thereunder pursuant to Section 27 of the Exchange Act, 15 U.S.C. § 78aa, and 28 U.S.C. § 1331 (federal question jurisdiction).

6.      This Court has jurisdiction over the defendants because each defendant is either a corporation that conducts business in and maintains operations within this District, or is an individual with sufficient minimum contacts with this District so as to make the exercise of jurisdiction by this Court permissible under traditional notions of fair play and substantial justice.

7.      Venue is proper in this District pursuant to 28 U.S.C. § 1391 because defendants are found or are inhabitants or transact business in this District.  Montage's common stock trades on the New York Stock Exchange which is headquartered in this District, rendering venue in this District appropriate.

**THE PARTIES**

8.      Plaintiff is, and has been at all times relevant hereto, a continuous stockholder of Montage.

9.      Defendant Montage is a Delaware corporation with its principal executive offices located at 122 West John Carpenter Freeway, Suite 300, Irving, Texas 75039.  The Company is an exploration and production company with approximately 195,000 net effective core undeveloped acres currently focused on the Utica and Marcellus Shales of Southeast Ohio, West Virginia and North Central Pennsylvania.  Montage's common stock trades on the New York Stock Exchange under the ticker symbol "MR."

10.      Defendant Randall M. Albert ("Albert") has served as Chairman of the Board since December 2019 and as a director of the Company since June 2014.

11.      Defendant Mark E. Burroughs, Jr. ("Burroughs") has been a director of the Company since January 2011.

12.      Defendant Don Dimitrievich ("Dimitrievich") has been a director of the Company since February 2019.

13.     Defendant Richard D. Paterson ("Paterson") has been a director of the Company since June 2014.

14.     Defendant D. Martin Phillips ("Phillips") has been a director of the Company since January 2011.

15.     Defendant John K. Reinhart ("Reinhart") has been President, Chief Executive Officer ("CEO") and a director of the Company since February 2019.

16.     Defendant Douglas E. Swanson, Jr. ("Swanson") has been a director of the Company since January 2011.

17.     Defendants identified in paragraphs 10-16 are referred to herein as the "Board" or the "Individual Defendants."

**OTHER RELEVANT ENTITIES**

18.     Southwestern is a Delaware corporation with its principal executive offices located at 1000 Energy Drive, Spring, Texas 77389.  It is an independent energy company engaged in natural gas, natural gas liquids ("NGLs") and oil exploration, development, production and the related marketing of natural gas, oil and NGLs produced in its operations.  Southwestern's common stock trades on the New York Stock Exchange under the ticker symbol "SWN."

**SUBSTANTIVE ALLEGATIONS**

**Background of the Company**

19.     Formed in 2014, Montage is an independent exploration and production company engaged in the acquisition and development of oil and natural gas properties in the Appalachian Basin.  On February 28, 2019, Montage completed a business combination with Blue Ridge Mountain Resources, Inc., and immediately thereafter, the Company changed its legal name from "Eclipse Resources Corporation" to "Montage Resources Corporation."

20.     As of June 30, 2020, the Company had assembled an acreage position

approximating 231,300 net surface acres in Eastern Ohio, 34,900 net surface acres in Pennsylvania, and 58,300 net surface acres in West Virginia, which excludes any acreage currently pending title.

21.     As of June 30, 2020, Montage had approximately 183,700 net acres in the Utica Shale fairway (the "Utica Core Area") and approximately 56,500 net acres of stacked pay opportunity which are prospective for the highly liquids rich area of the Marcellus Shale in Eastern Ohio and West Virginia (the "Marcellus Area").  Montage is the operator of approximately 92% of its net acreage within the Utica Core Area and Marcellus Area.

22.     As of June 30, 2020, Montage was operating one horizontal rig.  It had average daily production for the three months ended June 30, 2020 of approximately 551.7 million cubic feet of gas equivalent ("MMcfe") comprised of approximately 83% natural gas, 12% NGLs and 5% oil.

**The Proposed Transaction**

23.     On August 12, 2020, Montage and Southwestern issued a joint press release announcing the Proposed Transaction.  The press release states, in relevant part:

> SPRING, Texas--Southwestern Energy Company (NYSE: SWN) and Montage Resources Corporation (NYSE: MR) today announced that they have entered into a definitive merger agreement under which Southwestern Energy will acquire Montage Resources in an all-stock transaction.  Based on the 3-day average closing share prices of the companies as of August 11, 2020 and under the terms of the agreement, Montage Resources shareholders will receive 1.8656 shares of Southwestern for each Montage Resources share.  The transaction is expected to close in the fourth quarter of 2020, subject to customary closing conditions, including the approval of the Montage Resources shareholders.

> Highlights include:

> - Represents a step change in free cash flow; approximately $100 million annual free cash flow beginning in 2021 based on current strip pricing;

> - Accretive to per share financial metrics as well as leverage, margin and returns;

- Anticipated synergies of approximately $30 million in annual G&A savings captured following the transaction close, in addition to operational efficiencies;

- Maintains peer leading maturity runway and strong balance sheet;

- Combined company will be the third largest producer in Appalachia, expected total equivalent production of approximately 3 Bcfe per day; and

- Enhances economic inventory, with investment opportunities in proven, high-return Marcellus super rich and core Utica dry gas windows.

"This is an exciting step for Southwestern as we expand our Appalachia footprint with the high-quality assets of Montage. As we have consistently stated, we are firm believers in the benefits of value-creating consolidation. This transaction further solidifies the Company's position as a premier Appalachia operator and provides additional scale and synergies strengthened by our leading operational execution. Consistent with our strategy, this transaction is expected to deliver increased free cash flow, improved returns and long-term value to shareholders," said Bill Way, Southwestern Energy President and Chief Executive Officer.

Way continued, "This acquisition is expected to deliver on all criteria of an accretive, value-adding transaction for the shareholders of both Southwestern Energy and Montage Resources. Southwestern Energy has consistently and methodically taken steps to enhance its resilience over the last few years, and this transaction solidifies that path and delivers on the commitment to responsibly manage the balance sheet and return to free cash flow."

John Reinhart, President and CEO of Montage Resources, commented, "This transaction creates a compelling opportunity for both Southwestern Energy and Montage Resources shareholders to benefit from the strength of the consolidated company. The combination creates a Company of substantial scale with capabilities to enhance cash flow generation and a strong balance sheet that provides opportunities for enhanced shareholder value creation. We appreciate all of the great work by Montage employees in forming a very attractive business that will continue to build upon the success of Southwestern Energy."

Concurrently, Southwestern also commenced a registered underwritten public offering of 55,000,000 shares of its common stock, with the proceeds expected to be used to retire a portion of Montage Resources' 8.875% Senior Notes due 2023. The remaining portion of the Montage notes outstanding have the potential to be refinanced opportunistically.

## Insiders' Interests in the Proposed Transaction

24.     Montage insiders are the primary beneficiaries of the Proposed Transaction, not the

Company's public stockholders.  The Board and the Company's executive officers are conflicted because they will have secured unique benefits for themselves from the Proposed Transaction not available to Plaintiff and the public stockholders of Montage.

25.      Notably, Company insiders stand to reap substantial financial benefits for securing the deal with Southwestern.  Pursuant to the Merger Agreement, all outstanding restricted stock awards will vest and convert into the right to receive cash payments.  The following tables set forth the number of restricted stock awards held by Company insiders:

| Name(1) | Number of Restricted Stock Awards |
|---|---|
| Randall M. Albert | 11,667 |
| Mark E. Burroughs, Jr. | 11,667 |
| Don Dimitrievich(2) | — |
| Richard D. Paterson | 11,667 |
| D. Martin Phillips | 11,667 |
| Douglas E. Swanson, Jr. | 11,667 |

26.      In addition, if they are terminated in connection with the Proposed Transaction, Montage insiders stand to receive substantial cash severance payments as set forth in the following table:

### Potential Merger-Related Compensation Table

| | Cash Severance and Pro-Rated Bonus (1) | Equity (2) | Perquisites/ Benefits (3) | Total |
|---|---|---|---|---|
| Executive Officers | | | | |
| John K. Reinhart | | | | |
| President and Chief Executive Officer | $ 4,636,475 | $2,544,291 | $ 27,909 | $7,208,676 |
| Benjamin W. Hulburt | | | | |
| Former President and Chief Executive Officer (4) | $ — | $ — | $ — | $ — |
| Michael L. Hodges | | | | |
| Executive Vice President and Chief Financial Officer | $ 1,775,410 | $1,129,882 | $ 34,640 | $2,939,932 |
| Oleg E. Tolmachev | | | | |
| Former Executive Vice President and Chief Operating Officer (5) | $ — | $ — | $ — | $ — |

## The Proxy Statement Contains Material Misstatements or Omissions

27.      The defendants filed a materially incomplete and misleading Proxy Statement with the SEC and disseminated it to Montage's stockholders.  The Proxy Statement misrepresents or omits material information that is necessary for the Company's stockholders to make an informed

decision whether to vote in favor of the Proposed Transaction.

28.     Specifically, as set forth below, the Proxy Statement fails to provide Company stockholders with material information or provides them with materially misleading information concerning, among other things: (i) the Company's and Southwestern's financial projections and the data and inputs underlying the financial valuation analyses that support the fairness opinion provided by the Company's financial advisor, Barclays; (ii) Barclays' potential conflicts of interest; and the background of the Proposed Transaction.  Accordingly, Montage stockholders are being asked to vote for the Proposed Transaction without all material information at their disposal.

***Material Omissions Concerning Montage's and Southwestern's Financial Projections and Barclays' Financial Analyses***

29.     The Proxy Statement omits material information regarding Montage management's and Southwestern management's respective financial projections.

30.     For example, with respect to each of Montage's and Southwestern's projections, the Proxy Statement fails to disclose all line items used to calculate (a) EBITDAX, (b) cash flow from operating activities, and (c) free cash flow.

31.     Additionally, the Proxy Statement omits material information regarding Barclays' financial analyses.

32.     The Proxy Statement describes Barclays' fairness opinion and the various valuation analyses performed in support of its opinion.  However, the description of Barclays' fairness opinion and analyses fails to include key inputs and assumptions underlying these analyses. Without this information, as described below, Montage's public stockholders are unable to fully understand these analyses and, thus, are unable to determine what weight, if any, to place on Barclays' fairness opinion in determining whether to vote in favor of the Proposed Transaction.

33.     With respect to Barclays' *Net Asset Value Analysis*, the Proxy Statement fails to

disclose: (i) the future after-tax cash flows utilized, and all underlying line items; (ii) the after-tax general and administrative costs for both Montage and Southwestern; (iii) the other capital expenditure and cost adjustments for Montage; (iii) the value of hedges for each of Montage and Southwestern; (iv) the drilling and completion costs for both Montage and Southwestern; (v) the value of the midstream and marketing earnings for Southwestern; (vi) the value of firm transportation commitment shortfalls for Southwestern; and (vii) the carryover basis and NOL balances for both Montage and Southwestern; and (viii) the range of discount rates utilized as well as a quantification of the inputs and assumptions underlying the range.

34.     With respect to Barclays' *Selected Comparable Company Analysis*, the Proxy Statement fails to disclose the individual multiples and financial metrics for each company analyzed by Barclays.

35.     With respect to Barclays' *Selected Comparable Transactions Analysis*, the Proxy Statement fails to disclose the individual multiples and financial metrics for each transaction analyzed by Barclays.

36.     With respect to Barclays' *Pro Forma Merger Consequences Analysis*, the Proxy Statement fails to disclose: (i) the range of valuation multiples applied to the Montage EBITDAX for 2021; and (ii) the specific accretion and dilution figures resulting from the analysis.

37.     With respect to Barclays' *Transaction Premium Analysis*, the Proxy Statement fails to disclose the individual premiums for each of the transactions analyzed.

38.     With respect to Barclays' *Equity Research Analyst Price Target Analysis*, the Proxy Statement fails to disclose the individual price targets for Montage and the sources thereof.

39.     Without such undisclosed information, Montage stockholders cannot evaluate for themselves whether the financial analyses performed by Barclays were based on reliable inputs

and assumptions or whether they were prepared with an eye toward ensuring that a positive fairness

opinion could be rendered in connection with the Proposed Transaction.  In other words, full

disclosure of the omissions identified above is required in order to ensure that stockholders can

fully evaluate the extent to which Barclays' opinion and analyses should factor into their decision

whether to vote in favor of or against the Proposed Transaction.

40.    The omission of this material information renders the statements in the "Certain

Unaudited Forecasted Financial Information" and "Opinion of Montage's Financial Advisor"

sections of the Proxy Statement false and/or materially misleading in contravention of the

Exchange Act.

***Material Omissions Concerning Barclays' Potential Conflicts of Interest***

41.    The Proxy Statement fails to disclose material information concerning the potential

conflicts of interest faced by Barclays.

42.    The Proxy Statement sets forth:

[I]n the past two years, Barclays has performed and received fees for certain
financial advisory services to Blue Ridge Mountain Resources, Inc. in connection
with its merger with Eclipse Resource Corporation announced in August 2018.
Montage is the resulting combined entity of such merger transaction. Further, an
affiliate of Barclays is a lender under Montage's existing revolving line of credit
facility.

Proxy Statement at 78.  The Proxy Statement further states:

In addition, Barclays and its affiliates in the past have provided, currently are
providing, or in the future may provide, investment banking services to EnCap, and
certain of its affiliates and portfolio companies and have received or in the future
may receive customary fees for rendering such services, including (i) having acted
or acting as financial advisor to EnCap, certain of its affiliates and/or portfolio
companies in connection with certain mergers and acquisition transactions;
(ii) having acted or acting as arranger, bookrunner and/or lender for EnCap, certain
of its affiliates and/or portfolio companies in connection with the financing for
various acquisition transactions; and (iii) having acted or acting as underwriter,
initial purchaser and placement agent for various equity and debt offerings
undertaken by EnCap, certain of its affiliates and/or portfolio companies.

*Id.* at 78-79.  The Proxy Statement fails, however, to disclose the compensation Barclays received for the services performed for the Company and EnCap.

43.     Full disclosure of investment banker compensation and all potential conflicts is required due to the central role played by investment banks in the evaluation, exploration, selection, and implementation of strategic alternatives.

44.     The omission of this material information renders the statements in the "Opinion of Montage's Financial Advisor" section of the Proxy Statement false and/or materially misleading in contravention of the Exchange Act.

***Material Omissions Concerning the Background of the Proposed Transaction***

45.     The Proxy Statement fails to disclose material information concerning the background leading to the Proposed Transaction.

46.     For example, the Proxy Statement sets forth:

> On February 4, 2020, Montage and Company B executed a mutual confidentiality agreement, and Montage provided Company B with access to an electronic data-room. The confidentiality agreement contained a customary reciprocal standstill provision and a provision prohibiting either party from requesting or proposing to waive, terminate or amend the standstill provision.

*Id.* at 41, 43.  The Proxy Statement similarly states that the Company entered into confidentiality agreements with Southwestern and parties identified in the Proxy Statement as "Company A" and "Company C."  The Proxy Statement fails to disclose whether the non-disclosure agreements contained "don't-ask, don't-waive" ("DADW") standstill provisions that are still in effect. Critically, although the Proxy Statement states that the confidentiality agreements the Company entered into with Southwestern, Company A and Company C included "fall away" provisions that would render the standstill provision inoperative under certain circumstances, the Proxy Statement fails to disclose whether the confidentiality agreement entered into with Company B contained a

similar "fall away" provision or if the Company B is currently precluded from making a topping bid for the Company.

47.     The omission of this information renders the statements in the "Background of the Merger" section of the Proxy Statement false and/or materially misleading in contravention of the Exchange Act.

48.     The Individual Defendants were aware of their duty to disclose the above-referenced omitted information and acted negligently (if not deliberately) in failing to include this information in the Proxy Statement.  Absent disclosure of the foregoing material information prior to the stockholder vote on the Proposed Transaction, Plaintiff and the other stockholders of Montage will be unable to make an informed voting decision in connection with the Proposed Transaction and are thus threatened with irreparable harm warranting the injunctive relief sought herein.

## CLAIMS FOR RELIEF

### COUNT I

**Claims Against All Defendants for Violations of Section 14(a) of the Exchange Act and Rule 14a-9 Promulgated Thereunder**

49.     Plaintiff repeats all previous allegations as if set forth in full.

50.     During the relevant period, defendants disseminated the false and misleading Proxy Statement specified above, which failed to disclose material facts necessary to make the statements, in light of the circumstances under which they were made, not misleading in violation of Section 14(a) of the Exchange Act and SEC Rule 14a-9 promulgated thereunder.

51.     By virtue of their positions within the Company, the defendants were aware of this information and of their duty to disclose this information in the Proxy Statement.  The Proxy Statement was prepared, reviewed, and/or disseminated by the defendants.  It misrepresented

and/or omitted material facts, including material information about Montage and Southwestern's financial projections relied upon by Barclays for its financial analyses, the data and inputs underlying the valuation analyses performed by Barclays, Barclays' potential conflicts of interest, and the background of the Proposed Transaction.  The defendants were at least negligent in filing the Proxy Statement with these materially false and misleading statements.

52.     The omissions and false and misleading statements in the Proxy Statement are material in that a reasonable stockholder would consider them important in deciding how to vote on the Proposed Transaction.

53.     By reason of the foregoing, the defendants have violated Section 14(a) of the Exchange Act and SEC Rule 14a-9(a) promulgated thereunder.

54.     Because of the false and misleading statements in the Proxy Statement, Plaintiff is threatened with irreparable harm, rendering money damages inadequate.  Therefore, injunctive relief is appropriate to ensure defendants' misconduct is corrected.

## COUNT II

**Claims Against the Individual Defendants for Violations of
Section 20(a) of the Exchange Act**

55.     Plaintiff repeats all previous allegations as if set forth in full.

56.     The Individual Defendants acted as controlling persons of Montage within the meaning of Section 20(a) of the Exchange Act as alleged herein.  By virtue of their positions as officers and/or directors of Montage, and participation in and/or awareness of the Company's operations and/or intimate knowledge of the false statements contained in the Proxy Statement filed with the SEC, they had the power to influence and control and did influence and control, directly or indirectly, the decision-making of the Company, including the content and dissemination of the various statements which Plaintiff contends are false and misleading.

57.    Each of the Individual Defendants was provided with or had unlimited access to copies of the Proxy Statement and other statements alleged by Plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected.

58.    In particular, each of the Individual Defendants had direct and supervisory involvement in the day-to-day operations of the Company, and, therefore, is presumed to have had the power to control or influence the particular transactions giving rise to the securities violations as alleged herein, and exercised the same.  The Proxy Statement at issue contains the unanimous recommendation of each of the Individual Defendants to approve the Proposed Transaction.  They were, thus, directly involved in the making of the Proxy Statement.

59.    In addition, as the Proxy Statement sets forth at length, and as described herein, the Individual Defendants were each involved in negotiating, reviewing, and approving the Proposed Transaction.  The Proxy Statement purports to describe the various issues and information that they reviewed and considered—descriptions the Company directors had input into.

60.    By virtue of the foregoing, the Individual Defendants have violated Section 20(a) of the Exchange Act.

61.    As set forth above, the Individual Defendants had the ability to exercise control over and did control a person or persons who have each violated Section 14(a) and SEC Rule 14a-9, promulgated thereunder, by their acts and omissions as alleged herein.  By virtue of their positions as controlling persons, these defendants are liable pursuant to Section 20(a) of the Exchange Act.  As a direct and proximate result of defendants' conduct, Montage's stockholders will be irreparably harmed.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff demands judgment and preliminary and permanent relief, including injunctive relief, in his favor on behalf of Montage, and against defendants, as follows:

A.    Preliminarily and permanently enjoining defendants and all persons acting in concert with them from proceeding with, consummating, or closing the Proposed Transaction and any vote on the Proposed Transaction, unless and until defendants disclose and disseminate the material information identified above to Montage stockholders;

B.    In the event defendants consummate the Proposed Transaction, rescinding it and setting it aside or awarding rescissory damages to Plaintiff;

C.    Declaring that defendants violated Sections 14(a) and/or 20(a) of the Exchange Act, as well as SEC Rule 14a-9 promulgated thereunder;

D.    Awarding Plaintiff the costs of this action, including reasonable allowance for Plaintiff's attorneys' and experts' fees; and

E.    Granting such other and further relief as this Court may deem just and proper.

## JURY DEMAND

Plaintiff demands a trial by jury.

Dated:  October 29, 2020

**WEISSLAW LLP**

By _____

Richard A. Acocelli
1500 Broadway, 16th Floor
New York, New York 10036
Telephone: (212) 682-3025
Facsimile: (212) 682-3010
Email: racocelli@weisslawllp.com

*Attorneys for Plaintiff*